The Honorable Court, all rise! The Honorable United States Court of Appeals of the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. You may be seated. The Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 22-1202, United States v. Alicio Vaquerano Canas. At this time, would Attorney Hedges please come to the podium and introduce herself on the record to begin? Before you begin, Judge Howard, I just want to make sure that you can hear us and we can hear you. Good morning. I'm fine. Okay, great. Okay, please start. Good morning, and may it please the Court, Jessica Hedges for Mr. Vaquerano Canas. I would like to reserve two minutes for rebuttal. You may. We are asking that this matter be remanded for resentencing based on two errors by the sentencing judge. First, the sentencing judge erred in applying a two-point minor role adjustment to Mr. Vaquerano, who was under 21 at the time of the offense. And second, the sentence was substantively unreasonable where the court did not engage meaningfully with scientific developments, recognizing that late adolescents are less culpable and more capable of change than juveniles. I would like to address the second issue first briefly, the reasonableness of the sentence. I understand that contending that a sentence is substantively unreasonable, particularly one which involves a conviction for murder, is a burdensome task. I focused on this issue below, and I focus on it here first, because this is an area where courts have frequently recognized that they have not reached a defensible result, that they have gotten it wrong. Said more simply, courts have approached this issue with serious implications for young people and have re-evaluated their thinking around this issue. Our contention here is that sentencing a 22-year-old to a 43-year prison sentence, roughly equivalent to his expected lifespan in a sentence which the Sentencing Commission treats as a de facto life sentence, for conduct that he committed when he was only 18 years old, is substantively unreasonable. Can I just understand the argument? At points, it sounds like you're saying no matter the level of engagement with the evidence, this length of sentence for an offender of the age of the offender at the time it occurred, in light of the science, is always substantively unreasonable. And then at times, it sounds like you're saying there was some defect in the way the district court engaged with that evidence such that if he had engaged with it differently, he could have reached the same sentence without it then being substantively unreasonable because it would have had a defensible result in the plausible. Which of the two are you arguing? So, Your Honor, perhaps we're arguing that what the court should have done is engage with each one of the 3553 factors through the lens of the science. Are you saying that there's a way to engage with that meaningfully that could have yielded this outcome? Or are you saying that it doesn't matter really whether you engage with it because there's no way to engage with it that could yield this outcome? Your Honor, we're saying there is a way that the court could have engaged with it meaningfully and yielded this outcome. That would have been a way that recognizes that not only are juveniles different, but emerging adults are different. People in this age range, 18 to 21, are different. And so, approaching the 3553 factors... I'm just trying to think of how to operationalize it, what you're actually asking district court to do. So the district court here had before it the evidence, referred to the evidence, and also referred to the age of the offender. So it did all of those things, which I could see how if it hadn't done any of those things, it would be hard to say it engaged meaningfully with the evidence that you're identifying. But having done that much, what more is required on your view that would justify vacating the sentence? So what would be required under our view is to engage with, for instance, deterrence, incapacitation, rehabilitation, not just to... I believe what the... Well, I'm just trying to figure out what that means, practically speaking. So what are we... because we have to, you know, if we're going to do this, we would have to be telling a district court, here's what you need to do. And engaging meaningfully is a little hard to... So weighing, Your Honor, weighing the... about the age of the offender in response to a pretty well-developed record about the science. And so we cite in our brief a case in a compassionate release context, the Cruz case as well as the Ramsey case, where you see courts engaging meaningfully, looking through the lens of juvenile and emerging adult brain science, through the lens of that science, and addressing this category of offenders differently. Meaningfully looking, analyzing, for instance, what does deterrence mean in the context of an adolescent offender or an emerging adult. What does that mean? So you go through it step by step. What would be the next... I mean, what would that look like? What would it... how would you do that? It would be asking meaningful questions about each one of those things, and how does the science bear upon each one of those factors. How does the science bear upon deterrence for an 18-year-old offender? How does the science bear upon rehabilitation for an 18-year-old offender? And asking detailed questions about that, and in a decision, weighing those issues as it relates to each one of the 35, 53 factors. I'm looking at the time. I do want to just briefly touch upon the second... Before you... we can give you a little more time. I just want to make sure my colleagues have questions on this part of your argument. I'm fine, thank you. Just one. When you're talking about deterrence, if you're referring to general deterrence, who is it that you're trying to deter? Why is the age of this offender terribly relevant to the age of others who might be deterring? To put it in harsh terms, look what happened to the 22-year-old, and you're 30, you should be deterred. Your Honor, what the science tells us relative to deterrence is that for this category of individuals, deterrence is less effective because they're more prone to impetuous and ill-considered actions. So when you're talking about specific deterrence, that holds true, but also when you're talking about general deterrence, that holds true as well. General deterrence for that category of offender. Why is it that age category of offenders that's relevant? That's a fair question, Your Honor. For general deterrence purposes, perhaps it should be weighed less heavily in evaluating general deterrence. Turning to the first issue, the sentencing judge erred in applying a two-point use of a minor adjustment to Mr. Vacarano. The difference here is not marginal, it's important to say. Had the two points not been applied, the guideline range would have been 292 to 365 months. Thus the high end of the guideline range would have been more than 12 years below the sentence imposed. The First Circuit hasn't ruled on this issue, and we're urging the Court now to follow the correct conclusion, what we believe to be the correct conclusion of the Sixth Circuit in Butler. The Congressional Directive here directed, it was clear, it was unambiguous. It indicated that it applied to a defendant 21 years or older. Can I just add, suppose there was no Congressional Directive. This guideline could have been issued by the Commission given its general discretion, correct? Yes. So I guess this is the puzzle, which is let's say one was persuaded that this guideline does not implement the statutory directive for all the reasons you say. Does that mean it's void? In other words, why isn't that just an indication that the directive has not been carried out? But if our question is, does the Commission have authority to issue the guideline, doesn't it? I believe the Commission has authority to issue the guideline, but where there is a Congressional Directive, which gives clear and unambiguous direction, that the language of the directive doesn't say you cannot issue this kind. It says you must issue a different kind. And if we were to agree with you they didn't do that, I still am not quite seeing how we then get to the further conclusion and therefore it's void. Why isn't that just there was a failure to implement the directive, but notwithstanding that, they had background statutory authority to issue all kinds of things that they're not directed to do, of which this would be one. But the Sentencing Commission had a clear directive to do a specific thing, which was to pass an amendment dealing with people who are 21 years or older. This is not as if they're evaluating an issue and coming up with an amendment on their own. So it's the Court's job to square the Congressional intent with the Sentencing Commission's ultimate issuance of the amendment. And that is what they did not do. So what the Sixth Circuit said in Butler is that courts need to do that. Courts need to look at the directive and compare the directive to what actually happened. What are we to make of Congress's failure to then reject the Sentencing Commission's expanded enhancement? As the Sixth Circuit said in Butler, that silence alone should not outweigh the Congressional history and the clear language of the directive itself. If that were to be the case in every case, there's a 180-day waiting period in every case, where the Congress didn't send back the amendment, then the courts would have no role. It's still the Court's role to square the language of the directive with the language of the amendment. Is there anything in the record that indicates that the Commission understood itself solely to be exercising its authority to implement this directive? If I understand your question correctly, I do not believe so. Judge Howard, any further questions? Thank you. Chief Judge Barron, and may it please the Court, Mark Quinlivan on behalf of the United States. If I could begin with the last issue, because the implemented guideline is not at odds with the Congressional directive, either as a matter of text or structure, and the history of that enactment, which includes the report and wait 180-day period, confirms that fact. As four of the five courts of appeals to have considered this question have found, Congress directed the Sentencing Commission to implement a guideline that provides that defendants 21 years or older receive an appropriate enhancement if they involve a minor in the offense of conviction, but also instructed the Commission to take several factors into account when it promulgates the guidelines. Do you think it's fair to read Congress as wanting to treat a 21-year-old who involves a youth more harshly than a 15-year-old who involves a minor? If I understand your question correctly, I think, well, as a general matter, if you're under 18, then both as a matter of criminal law and the guidelines, those offenders are treated differently. I'm saying under this guideline, the directive to issue the guideline that the statute contemplated, does it include a 21-year-old who involves a youth more harshly than, say, a 16-year-old who involved a 17-year-old? I think that's certainly one way to read Congress's initial... But I just want to stick with this point. Yes, no, I think it's fair to say... So did this guideline achieve that congressional objective? Yes, it did, because... How does this guideline treat the 21-year-old who involves a youth more harshly than a 17-year-old or 16-year-old who involves a youth? Doesn't it treat them equivalently harshly? I guess I'm struggling with the question. Maybe we would have to say an 18- or 19-year-old, because that's the demarcation line. It initially thought that it would apply to youth, offenders 21 or older, but then said take several of these factors into account, two of which bear directly on the age of the offender in question. Last time, let's do it with the 18 or 19, okay? As I read the congressional directive, it looks like they thought there was something particularly bad about a 21-year-old involving a youth, correct? Yes, I think that's correct. Does the guideline single out a 21-year-old relative to people younger than that who involve a youth? No, the guideline does not. So in that sense, how does the guideline implement the directive that Congress gave? Well, in two separate ways, Your Honor. First, as a literal matter, Congress did enact a guideline that applied to offenders 21 years or older, but then in taking into account the other factors that Congress directed the Sentencing Commission to consider, Congress expanded the guideline. But the way they expanded it makes it that the 21-year-old is not treated more harshly. That's correct, but I would point out that one of the specific factors that Congress directed the Sentencing Commission to consider was the fact that the guidelines already provide a two-point bump for offenders who use a minor in the commission of a drug offense. And Congress said that using a minor in the course of a crime of violence is frequently of even greater seriousness. Congress said that or the commission said that? This is what Congress said. It directed the Sentencing Commission to take that into account. Now, the drug guideline that Congress was referencing, which is Section 2D1.2A1, applies to any offender 18 years or older. So if Congress believed that using a minor in the course of a crime of violence is even of greater seriousness than using a minor in the course of a drug offense, the Sentencing Commission sensibly could have concluded that it would make no sense to limit this guideline to offenders 21 years of age or older. And taking a step back more generally, the Sentencing Commission could also have taken into account that the guidelines, as a general matter, apply to offenders 18 years or older. I'm not aware of any other guideline that limits its application to offenders 21 years of age or older. So taking those factors into account, which Congress specifically directed the Sentencing Commission to consider, the promulgated guideline is not at odds with the congressional directive. And then that conclusion, you then take a further step back and look at the history of that promulgation. Congress ensured that it had a say whenever the commission promulgated the Sentencing Commission. And then it promulgates or amends a guideline through the 180-day report and wait period. So suppose one were to say that the text of the statute doesn't track the way you're putting it all together. What then would follow? I think you still have to look, because this is a unitary process. And so I still think you would have to look at what Congress did or did not. Suppose I thought the ratification, one thought the ratification argument was not very convincing. What then would follow? If there's a statutory directive to issue a certain kind of guideline, the guideline that is issued doesn't seem to achieve the objective of the statutory command. And yet it's not a guideline that, had there been no command, the commission couldn't issue. What are we supposed to do? I think I have two answers to you, Judge Barron. First, as a purely legal matter, I think the test that the Supreme Court set out in Levanti is whether the guideline is at odds with the plain text of the guideline. So if a court found that a particular guideline was at odds with the plain text of the directive, I think that you would have to have a very high showing in terms of the then following. I guess what I'm trying to, the at odds here is just a funny thing, because the thing it is at odds with, if one thought there was a disconnect, is a command to do something, not a prohibition against doing something. So if I don't carry out Congress's command, am I at odds with it if I issue a guideline that I otherwise am empowered to issue? Does the government have a view on that question? Certainly, and I think that goes to the point which we made in our brief, which is that this is not an unusual instance. The Sentencing Commission frequently implements a congressional directive when we're talking about this particular type of situation in broader form or slightly broader form than the congressional directive. What you don't see, and I've searched the guidelines and the statutes, is the Sentencing Commission going in the other direction, enacting or promulgating a guideline in narrower form than what Congress wanted to do. And I think that that's because, as a practical matter, the Sentencing Commission The difficulty is narrower and broader in this context just strikes me as a little confusing. Because if the objective of Congress was to single out 21-year-olds for harsher treatment than others that involve youth, going broader potentially undermines the very aim Congress was after. I understand you're making the argument that wasn't Congress's aim, but the text, as the Sixth Circuit thought, is fairly read to suggest it was Congress's aim. So broader here isn't really a concept. It is really undermining that aim. Let me take a step back and potentially take back an answer to one of your questions, because I don't think that you can read this guideline as saying that Congress wanted to treat 21-year-olds or older more harshly than 18- to 20-year-olds. I think that the most natural reading is that the guideline has to apply at a minimum to offenders 21 years of age or older, and then Congress said, but we want you to take into account all of these other factors. And I do want to add, one of those other factors was the proximity in age between the offender and the minor in question. And as the Seventh Circuit pointed out in Ramsey, this commission, quite frankly, reasonably could have concluded that someone 18 or 19 exercises as much, if not sometimes more, authority over a minor than does someone older. And this case is a perfect illustration of that, because MS-13 in Massachusetts targets high schoolers in East Boston and Chelsea in particular to become members of the gang. And that depends in large part on the ability to attract minors, and 18- and 19- and 20-year-olds are best able to achieve that. I want to make sure my colleagues have a chance to ask any questions, and then if you want to address the second brain science issue, I want to give you some time to do that. No, thank you. Just briefly on substantive reasonableness. The test, as this Court has said over and over again, is whether the district court provided a plausible sentencing rationale and a defensible overall result. I think the district court in this case went through the 3553A factors in exhaustive detail in explaining the sentence imposed. I would point out that my friend argues that he should have asked probing questions. The court did not. The court did. If you go through the sentencing transcript and you look at both the court's discussion with the government when it was making its sentencing recommendation and with my friend, the court asked numerous, a series of questions about the science regarding 18- and 20-year-olds. And the court took that into account in fashioning the sentence. The court specifically said it was taking into account the fact that the defendant was 18 years of age when he committed the crime in question. He specifically said that he took into account the fact that people of that age sometimes are continuing to develop. He specifically took into account the defendant's allocution and said that the court was initially inclined to impose a sentence of 50 years imprisonment, but based on that allocution and the other factors, the court was imposing a sentence seven years less than that because he did not believe this defendant was hopeless. And I point out that this is in contrast to the Salvador Gutierrez case where the same district court imposed a sentence of life imprisonment on one of the co-defendants where the court said that this was as hopeless an individual as he had seen in 37 years. The court took each one of the sentencing factors into account. It more than satisfied its burden of providing a plausible sentence, sentencing rationale and defensible overall result. And at the end of the day, the argument I would suggest is simply that the district court didn't give enough weight to the mitigating factor that my friend argues the court should have. And this court has repeatedly said that's not a sound basis to declare a sentence substantively unreasonable. Thank you. Good morning again, Your Honor. Jessica Hedges from Mr. Vaccarano Connors. Just briefly on the issue of the use of the minor, two things. Chief Judge Barron, you had raised an issue about the relative ages. And I just wanted to point out that under the government's suggested reading of the guidelines here, which is contrary to the Butler approach, this guideline would have the perverse effect, which clearly is not consistent with the objective of Congress where a 16-year-old who is charged as an adult, or I'm sorry, a 17-year-old who is charged as an adult, backwards, a 16-year-old who is charged as an adult could be using a 17-year-old, another minor. So the intent of Congress here, targeting the targeting intent of Congress, the targeting of minors is a unique scenario. Could you just address that, the point the government made though about the drug enhancement, which doesn't have this age distinction, which is subject to the same perverse result you just described, in connection with what the government represents as Congress's recognition that this is, if anything, more serious than that context? So how do we square that sign from Congress, that other guideline, and then what you're arguing is the right way to understand what Congress wanted the commission to do here? So first, Your Honor, the drug amendment guideline 2D1.2 was passed in response to a clear directive from the Anti-Drug Abuse Act of 1988. Directing to add two points involving a person, and they were clear, and they didn't need to say only, a person under 18 years of age. So they were clear about what their objective was there. I read the directive relative to the use of the minor, the congressional directive, on the two points here, that a violent crime is more severe than a drug crime, as inviting, perhaps, the Sentencing Commission to consider adding additional points. So perhaps two points, if it's a violent crime, or three points if it's a violent crime, two points if it's a different kind of crime. So to consider meaningful gradations related to the type of crime, and also related to what they gesture towards the proximity in age. Or they don't gesture towards, they explicitly say the proximity in age. So that was an invitation in my reading, and I think in the Butler Court's reading, to consider, again, directing to add two points. This is an issue of moving towards a relevance of this age point, 21 matters. This is not an issue of teenagers sitting at the cafeteria table together and saying, hey, come do what I'm doing. This is an issue of targeting of young people for criminal activities by older people with more experience, more knowledge, and more ability to exploit, not kids sitting together at the cafeteria table. Thank you. You are excused.